UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HAMZA MALDONADO,[1]

        Plaintiff,

v.                                 Case No. 3:20-cv-1109-MMH-PDB

NASSAU COUNTY SHERIFF'S
OFFICE, et al.,

        Defendants.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

### I. Status

Plaintiff, Hamza Maldonado, a former detainee of the Nassau County Jail who is currently incarcerated at the Federal Correctional Institution in Fairton, New Jersey, initiated this action on August 20, 2020 by filing a Complaint (Doc. 3) with exhibits (Docs. 3-1 through 3-8) in the Fourth Judicial Circuit Court in and for Nassau County, Florida. Eight Defendants removed the case to this Court on September 29, 2020.[2] See Notice of Removal (Doc. 1).

---

[1] Another pretrial detainee of the Nassau County Jail, Emanuel Paulisaint, was initially also a named Plaintiff. See Doc. 3. On March 5, 2021, the Court dismissed without prejudice all claims that Paulisaint raised for lack of prosecution and terminated him as a party in this case. See Doc. 17.

[2] Service has not been executed on two Defendants – Anonymous Inmate Howard Jones and the United States Marshals Service.

Maldonado's claims against ten Defendants remain – (1) the Nassau County Sheriff's Office; (2) Detective Murdock; (3) Detective Beazley; (4) Captain Paula DeLuca; (5) Sergeant Edgy; (6) Sergeant Morgan; (7) Lieutenant Nye; (8) the United States Marshals Service; (9) Anonymous Inmate Howard Jones; and (10) Sergeant Campbell.[3] Id. at 1. In the Complaint, Maldonado alleges that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments. See generally Doc. 3. As relief, Maldonado seeks monetary damages, requests that the Court appoint counsel, and asks the Court to order Defendants to learn basic Muslim faith practices. Id. at 22.

This matter is before the Court on Defendants Nassau County Sheriff's Office, Murdock, Beazley, DeLuca, Edgy, Morgan, Nye, and Campbell's Motion to Dismiss Complaint (Motion; Doc. 6). The Court advised Maldonado that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation and allowed him to respond. See Order (Doc. 12). Maldonado filed a response in opposition to the Motion (Response; Doc. 16). Thus, Defendants' Motion is ripe for review.

## II.    Maldonado's Allegations

In the Complaint, Maldonado alleges that on April 22, 2020, jail officials illegally transferred him from the Baker County Jail to the Nassau County Jail

---

[3] Maldonado also named the Florida Department of Law Enforcement as a Defendant, but the Court dismissed all of Maldonado's claims against the FDLE and terminated it as a Defendant on June 7, 2021. See Doc. 20.

"without due process and his life was placed in danger because he was exposed to the deadly coronavirus." Doc. 3 at 7. According to Maldonado, when he entered the Nassau County Jail, officials allowed Maldonado to keep in his possession his Universal Serial Bus (USB) flash drive. Id. at 7, 11. Maldonado asserts that at some point after his transfer, Defendant Inmate Howard Jones went into Maldonado's cell without permission and stole some printed pornographic photographs. Id. at 17. According to Maldonado, when Jones tried to sell the photos to another inmate, officials confronted Jones about the material, and Jones advised officials that the photos came from Maldonado's USB drive. Id.

Maldonado alleges that Defendants then confiscated his USB drive. He asserts Defendants were allowed to inspect the USB drive for contraband in Maldonado's presence, however, they did not conduct the search in his presence and they illegally "took printouts of its contents without a court order or con[s]ent to do so . . . ." Id. at 7. Maldonado alleges that upon seeing pornographic photos on the USB flash drive, officials deemed the device "contraband" and refused to return the USB flash drive to Maldonado. Id. Maldonado admits that the device contained pornographic or "XXX rated" photographs but argues that the photos were not "contraband," but were evidence being used in his ongoing civil actions and criminal case. Id. at 12, 17. For example, Maldonado contends that he needs the evidence for discovery in

a civil rights action he is pursuing against Baker County Jail officials who allegedly brought the pornographic photos into the jail. Id. at 9, 12-13. He also alleges that the USB flash drive contained other non-illicit documents, including medical records, correspondence between him and his attorney, and "the only legal copy of [Maldonado's] book." Id. at 11.

Maldonado contends that he explained to officials how he needed access to the documents despite their obscene nature and argues that no jail policy regulating alleged "contraband" takes priority over his right to access his USB flash drive. Id. at 14. According to Maldonado, two months after taking the USB flash drive, Defendant DeLuca allowed Maldonado to access the device, but later modified his access by allowing Maldonado to review the documents only if Defendant "Edgy and Sgt. Hiyers [sic]" maintained possession of the device under lock and key when it was not in use. Id. at 8. He also complains that on some unspecified date, Defendant Edgy, Hiyers, or Defendant DeLuca gave the USB flash drive to Defendants Murdock and Beazley without Maldonado's consent, id. at 11, and that Defendant Campbell violated his rights when she conducted cell searches without him being present and took his personal property and photographs during the search, id. at 18-19. As for the United States Marshals Service, Maldonado states that "it is a named Defendant because [Deputy United States Marshals] took illegal possession of

Mr. Maldonado's medical and attorney-client legal information without legal authorization." Id. at 16.

After a liberal reading of the Complaint, Maldonado seemingly asserts that Defendants' actions violated his rights under the First Amendment (retaliation, religion, and access to courts); the Fourth Amendment (illegal search and seizure of property); and the Fourteenth Amendment (due process, equal protection, and deliberate indifference to conditions of confinement). He also argues some of the confiscated documents were protected by attorney-client privilege, the Health Insurance Portability and Accountability Act (HIPAA), and copyright law.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto

counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 706).

## IV. Defendants' Motion and Plaintiff's Response

Defendants request dismissal of Maldonado's claims against them for his failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Doc. 6 at 2-6. They also assert that to the extent "one can divine a 'claim' from the substance of [Maldonado's] [C]omplaint," it is due to be dismissed because he fails to state a claim upon which relief can be granted. <u>Id.</u> at 6-9. They likewise maintain that the Nassau County Sheriff's Office should be dismissed because it is not a legal entity subject to suit. <u>Id.</u> at 9-10. Finally, they argue that Maldonado is a three-strikes litigant, as defined in the Prison Litigation Reform Act (PLRA), and urge the Court to dismiss the action under 28 U.S.C. 1915(g).[5] <u>Id.</u> at 11.

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[5] Defendants also argue that Plaintiff Paulisaint has not stated a plausible claim for relief; however, because the Court has already dismissed Paulisaint as a party to this action, that argument is moot and need not be addressed.

In his Response, Maldonado argues that he states a plausible First Amendment claim about his right to access to courts and religious freedom. Doc. 16 at 2-6. He also asserts that he has alleged a sufficient claim that the confiscation of his intellectual property is a copyright and trademark infringement and that officials' review of the documents amounted to a HIPAA violation. Id. at 7-8.

### a. Federal Rules of Civil Procedure 8 and 10

Defendants assert that the Court should dismiss Maldonado's claims against them because he failed to comply with Federal Rules of Civil Procedure 8 and 10. See Doc. 6 at 2-6. They urge the Court to dismiss the Complaint because it "is fairly characterized as a shotgun pleading" and "a pleading such as this is 'altogether unacceptable.'" Id. at 5-6. They argue that from Maldonado's confusing title to the piecemeal, incoherent format, Defendants are forced to decipher the Complaint to determine what claims might be made against which Defendant and which factual allegations are intended to support each claim. Id. at 6. Maldonado does not address this argument in his Response. See generally Doc. 16.

The Federal Rules of Civil Procedure apply to matters of procedure only after a case enters federal court. See Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); see Lang v. U.S. Soc. Sec. Admin., 612 F.3d 960, 866 (8th Cir. 2010) ("It is axiomatic that state rules

of civil procedure apply to state court actions, and the federal rules of civil procedure do not."). Thus, the Court finds that Maldonado did not have to comply with the federal pleading requirements of Rules 8 and 10 when he filed his Complaint in state court. Thus, Defendants' Motion on this issue is due to be denied.

### b. Failure to State a Plausible Claim for Relief

Defendants next argue that to the extent "one can divine a 'claim' from the substance of" the Complaint, Maldonado fails to state a plausible claim upon which relief can be granted. Doc. 6 at 6-9. Liberally reading the Complaint, the Court addresses each discernable claim in turn.

i.   <u>First Amendment</u>

### *Retaliation*

Maldonado alleges that Defendants confiscated his USB flash drive in retaliation for the civil rights actions he has filed against the Nassau County Jail and the Baker County Jail. Doc. 3 at 8. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." <u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276

(11th Cir. 2008). And it is firmly established that an inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. Id. Three elements are involved in these retaliation claims:

> 1) [the inmate's] speech was constitutionally protected; 2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and 3) there is a causal relationship between the retaliatory action and the protected speech.

Smith, 532 F.3d at 1276. To establish the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (finding the district court erred by dismissing a complaint alleging retaliation with prejudice, "regardless of whether the retaliation claim ultimately [would] ha[ve] merit").

Maldonado fails to allege a causal relationship between the alleged retaliatory action (confiscating his USB drive) and the protected speech (civil rights actions). According to Maldonado, officials allowed the USB drive to

10

remain in his possession upon his transfer to the Nassau County Jail. Indeed, Exhibit B-3 of the Complaint (Doc. 3-5 at 2) is a July 2020 Memorandum Defendant DeLuca generated prior to confiscating the USB drive, in which she explains that Maldonado could retain possession of the USB drive but before each use, the IT department must screen the drive for viruses. She also explained that Maldonado could use the computer in the sergeant's office "when an officer can be with [him] since inmates are not allowed access to an NCSO [c]omputer." Id. DeLuca also stated that officials "suggested [Maldonado] send the drive to [his] lawyer but [he] declined to do so." Id.

According to the Complaint, Defendants took possession of the drive in August 2020 and deemed it "contraband." While he asserts that the August 2020 act was retaliatory, Incident Report (#2020-00000971), which Maldonado attaches as an exhibit to the Complaint, shows otherwise. See Doc. 3 at 27. It states:

> On August 10, 2020, I Sgt. Edgy was instructed by Captain DeLuca to retrieve[] inmate Maldonado, Samuel['s] thumb drive and bring it to her. On August 9, 2020, Alpha Shift conducted a shake down of C-200 and several pornography photos were found in the pod printed from a printer, an anonymous inmate advised that the photos came from inmate Maldonado[']s thumb drive (Incident Report 2020-963). Captain DeLuca, Lieutenant Nye, and I inspected the thumb drive, file folder 99 had twenty (20) videos and pictures, file folder New Folder had thirty-four (34) pictures. The thumb drive was then relinquished to Captain DeLuca.

Id. Officials charged Maldonado with violating "6-02 Refuse to Obey Rules" and "3-22 Poss Nude Or Porn Items." Id. Maldonado acknowledges both that the USB drive contained pornography and that even after officials took possession of the USB flash drive, they allowed him to review the drive when needed and kept the drive under lock and key when it was not in use. Doc. 3 at 8, 12, 17. Considering his allegations and the Complaint exhibits, Maldonado has not shown that his civil rights actions motivated Defendants to confiscate his USB flash drive. Rather, Defendants confiscated the device because it contained illicit material. And in any event, since Defendants still allowed Maldonado to access the drive after they confiscated it, he cannot show that Defendants' conduct would likely deter a person of ordinary firmness from continuing to file civil rights actions. Indeed, after Defendants took possession of the drive, Maldonado filed at least four more civil rights cases. See Nos. 3:20-cv-958-MMH-JBT;   3:20-cv-959-BJD-JBT;   3:20-cv-1109-MMH-PDB;   3:21-cv-1266-BJD-PDB.[6] Thus, he has failed to assert a plausible claim for which relief may be granted, and his retaliation claim is due to be dismissed.

---

[6] The Court takes judicial notice of its own records, and of public records within its own files. See Cash Inn of Dade, Inc. v. Metropolitan Dade Cnty., 938 F.2d 1239, 1243 (11th Cir.1991) (district court may take judicial notice of public records within its files relating to particular case before it or to related cases).

### *Freedom of Religion*

Maldonado also argues that Defendants violated his "religious rights" because as a Muslim, his legal and personal property is "sacred"; and no person may search his property without his permission regardless of the illegality of the property or a jail policy. Doc. 3 at 10, 12. He asserts Defendants' confiscation of the USB drive was an act of "religious discrimination." Id. In support of his argument, Maldonado attaches a scanned page from the Quran, highlighting a quote that states, "No doubt, your blood and your properties are sacred." Doc. 3-1 at 2.

Liberally read, Maldonado's discrimination claim is premised on the Free Exercise Clause of the First Amendment. The Supreme Court has explained that "[w]here the claim is invidious discrimination in contravention of the First . . . Amendment[ ], [its] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." Iqbal, 556 U.S. at 676, (citing Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 540-541, (1993)). Discriminatory purpose "involves a decisionmaker's undertaking a course of action 'because of, not merely in spite of, [the action's] adverse effects upon an identifiable group.'" Id. at 676-77 (alteration in original) (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)).

Thus, to state a plausible First Amendment freedom of religion claim, Maldonado "must plead sufficient factual matter to show that" Defendants took his USB drive "not for a neutral . . . reason but for the purpose of discriminating on account of . . . religion." Id. at 677; see also Pahls v. Thomas, 718 F.3d 1210, 1230 n.8 (10th Cir. 2013) ("[W]here liability is to be imposed upon an individual defendant for discrimination in violation of the First Amendment, a plaintiff must prove a discriminatory purpose, supported by evidence of the defendant's subjective motivations.").

Other than Maldonado's own conclusory statements, nothing in the Complaint suggests that Defendants took the USB flash drive to discriminate against Maldonado on account of his religion. Indeed, his allegations and Complaint exhibits support only a contrary conclusion. He alleges that the drive was confiscated because it contained pornographic material, which, according to the Incident Report, violates jail regulations. Thus, Maldonado has failed to state a plausible claim for relief under the Free Exercise Clause and this claim is due to be dismissed.

### Access to Courts

Maldonado alleges that Defendants' confiscation of his USB drive violated his right of access to the courts because it hindered his ability to litigate ongoing civil and criminal actions. Access to courts is a right grounded in several constitutional amendments, including the First Amendment.

Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003); see Barbour v. Haley, 471 F.3d 1222, 1224 n.2 (11th Cir. 2006) (noting that the prisoners' claim that they had been denied meaningful access to the courts implicated both the First and Fourteenth Amendments). See also Bounds v. Smith, 430 U.S. 817, 821-22 (1977) (prisoners enjoy a constitutional right to "adequate, effective, and meaningful" access to the courts), overruled in part on other grounds by Lewis v. Casey, 518 U.S. 343, 354 (1996). That right extends to pretrial detainees.

To state an access to courts claim, a plaintiff must first establish an actual injury. Lewis, 518 U.S. at 349-50; Barbour, 471 F.3d at 1225. "To allege an actual injury, the complaint 'must identify a nonfrivolous, arguable underlying claim.'" Alvarez v. Sec'y, Fla. Dep't of Corr., 646 F. App'x 858, 867 (11th Cir. 2016) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). "More specifically, the complaint must describe the underlying claim 'well enough to apply the nonfrivolous test and to show that the arguable nature of the underlying claim is more than hope.'" Id. (quoting Cunningham v. Dist. Attorney's Off. for Escambia Cnty., 592 F.3d 1237, 1271 (11th Cir. 2010)). Additionally, the plaintiff must show that the underlying nonfrivolous legal claim was raised, or would have been raised, in connection with a direct appeal, a collateral attack on his conviction, or a civil rights action. Lewis, 518 U.S. at 354-57; Cranford v. Nevada Dep't of Corr., 398 F. App'x 540, 546-47 (11th Cir. 2010). "Impairment of any other litigating capacity is simply one of the

incidental (and perfectly constitutional) consequences of . . . incarceration." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (quotations and citation omitted). And access to and use of legal materials may be reasonably restricted consistent with the demands of institutional administration. Turner v. Safley, 482 U.S. 78, 79 (1987); Hoppins v. Wallace, 751 F.2d 1161 (11th Cir. 1985).

Here, Maldonado fails to state a plausible access to courts claim because he has not alleged that he was prejudiced in his ability to bring or pursue a nonfrivolous claim. First, to the extent that Maldonado alleges that Defendants' actions hindered his then pending criminal case, that claim is frivolous. When Defendants removed this action to this Court, Maldonado was in pretrial custody awaiting the disposition of a federal criminal case, in which the United States was prosecuting Maldonado for failure to register as a sex offender. See United States v. Maldonado, No. 3:17-cr-179-TJC-PDB (M.D. Fla.). After his arrest, on June 6, 2018, the Court appointed Lisa Call, Assistant Federal Public Defender, to represent Maldonado in the case. Id. at Doc. 20. In September 2021, Maldonado filed a pro se motion to discharge court-appointed counsel and requested to represent himself. Id. at Doc. 100. The Court held a hearing on the motion, during which it conducted a Faretta[7]

---

[7] Faretta v. California, 422 U.S. 806 (1975).

inquiry. Id. at Docs. 108, 111. The Court then granted Maldonado's request to proceed pro se, finding that his waiver of counsel was knowingly, intelligently, and voluntarily made, and appointed Eric Roper as standby counsel. Id. at Doc. 112. In February 2022, Maldonado entered a guilty plea to the charge and the Court sentenced him to a seventy-month term of incarceration followed by a 120-month term of supervised release. Id. at Doc. 150.

Now, Maldonado alleges that Defendants' confiscation of the USB flash drive hindered his ability to defend himself in that criminal case, because the device contained confidential communications and discovery documents from his attorney. But when interpreting the right of access to courts outlined in Bounds, the Eleventh Circuit has held that access to additional legal material is not mandatory where legal counsel is provided as an alternative. Smith v. Hutchins, 426 F. App'x 785, 789 (11th Cir. 2011) (citing Hooks v. Wainwright, 775 F.2d 1433, 1435 (11th Cir. 1985) ("concluding state need not provide prisoners assistance of counsel in addition to libraries for purpose of filing collateral suits, stating, 'it is noteworthy that Bounds refers to law libraries or other forms of legal assistance, in the disjunctive, no fewer than five times.'")). Also, "[b]ecause Bounds addressed only the issue of access to courts in the context of inmates filing civil actions or habeas petitions for post-conviction relief, some courts have held that Bounds has no applicability to defendants

Case 3:20-cv-01109-MMH-PDB   Document 24   Filed 10/20/22   Page 18 of 40 PageID 393


representing themselves in criminal proceedings."[8] <u>Smith</u>, 426 F. App'x at 789 n.5.

Rather, where a pretrial detainee asserts that his lack of access to legal material has hindered his ability to defend himself in a pending criminal proceeding, the constitutional right of access to courts may be satisfied if the plaintiff has been provided the option of legal counsel and his decision to represent himself was voluntarily made. <u>Id.</u> at 789 (citing <u>Edwards v. United States</u>, 795 F.2d 958, 961, n. 1, 3 (11th Cir. 1986) (stating that when counsel is offered, other legal assistance is not mandatory, citing <u>Bounds</u>, 430 U.S. at 828)); <u>see also</u> <u>Degrate v. Godwin</u>, 84 F.3d 768, 769 (5th Cir. 1996) (explaining that a defendant who rejects court-appointed counsel has no constitutional right to access a law library in preparing a pro se defense at trial); <u>Daker v.</u>

---

[8] In <u>United States v. Chatman</u>, 584 F.2d 1358 (4th Cir. 1978), the Fourth Circuit Court of Appeals explained that the right of access to courts for pretrial detainees seeking assistance with a pending criminal action is based on the Sixth Amendment right to counsel. <u>Id.</u> at 1360. The court reasoned:

> [<u>Bounds</u>] held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. <u>Bounds</u>, of course, has no direct application to defendant. He was accused of [a] crime and had an absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read <u>Bounds</u> to give an option to the [p]risoner as to the form in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that <u>Bounds</u> has any application to the instant case, the United States satisfied its obligation under the Sixth Amendment when it offered defendant the assistance of counsel which he declined. We so hold. <u>Cf.</u> <u>United States v. West</u>, 557 F.2d 151 (8th Cir. 1977).

Warren, 660 F. App'x 737, 740 (11th Cir. 2016) (reiterating that under Eleventh Circuit precedent access to a law library is not mandatory for a pro se defendant when counsel has been offered).

Here, the Court need not resolve whether Bounds applies to pretrial detainees or whether Maldonado had a right to access additional legal material, because it is evident that the requirements of Bounds were satisfied. See Smith, 426 F. App'x at 790 n.5 ("Regardless of whether Bounds applies to pretrial detainees, we conclude in this case Bounds does not require access to a law library where Smith had the option of assistance of appointed counsel."). The court records in Maldonado's criminal case demonstrate that the trial court appointed counsel for Maldonado, but under the purviews of Faretta, it later found he voluntarily waived that right so he could proceed pro se. See Maldonado, No. 3:17-cr-179-TJC-PDB. Likewise, Maldonado's own allegations show he was either represented by court-appointed counsel or he had the option to receive assistance from his court-appointed counsel in his criminal case and declined that assistance so he could retain possession of the USB flash drive himself. Indeed, prior to confiscating the device, Defendants asked Maldonado if he wanted to give the USB flash drive to his court-appointed counsel, but he refused. Now, he complains about the difficulty of regaining possession of his USB drive, that admittedly contains illicit material, while housed in a pretrial detention facility. These facts do not sufficiently set forth

a constitutional claim. Also, even if Maldonado gave up his right to counsel and was proceeding in his criminal case pro se, he could have requested reappointment of an attorney to represent him by filing a motion or voicing his concerns at a scheduled hearing. This open and standing offer satisfied his First Amendment right of access to courts. <u>See</u> <u>Smith</u>, 426 F. App'x at 789-90, 790 n.5 ("Because Smith voluntarily and intelligently waived his right to counsel, Smith had no constitutional right to access . . . other legal resources during his pre-trial detention" and the option of appointed counsel satisfied the requirements of <u>Bounds</u>.).

Insofar as Maldonado argues that Defendants violated his attorney-client privilege when they searched the USB drive, that allegation also cannot show Defendants violated his right of access to courts. <u>See, e.g.</u>, <u>Fann v. Ederer</u>, No. 915-CV-1339 (DNH/CFH), 2016 WL 1261127, at *4 (N.D.N.Y. Mar. 30, 2016) (construing the plaintiff's claim that prison official's confiscation of legal property protected by attorney-client privilege as First Amendment access to courts claim and the plaintiff had to allege the confiscation prejudiced his ability to litigate).[9] Maldonado's own allegations support no inference other than that Defendants searched the USB drive to locate evidence of illicit

---

[9] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

photographs and videos that had been printed and distributed to other detainees in the jail, not to interfere with his relationship with his defense counsel. Maldonado does not allege that Defendants' actions prejudiced his ability to defend himself in his criminal case. Even after Defendants confiscated the drive, they merely stored the USB drive under lock and key and allowed Maldonado to access the drive under supervision when needed. Thus, he has failed to state a plausible access to courts claim related to his criminal case.

Second, to the extent that Maldonado alleges that Defendants' actions hindered his ability to pursue his civil rights lawsuits, that claim is also frivolous. Maldonado alleges that he was in possession of the pornographic material because a jail official uploaded the material onto a Baker County Jail computer. Doc. 3 at 12. And, according to Maldonado, he saved the material to his USB drive to pursue a claim that the Baker County Jail is corrupt. Id. In support of this allegation, he attaches a "draft" discovery motion. See Doc. 3-4 at 2. At the top of the "draft" motion, Maldonado lists two civil rights cases for which the "draft" motion was intended. Id. Also, in the Complaint, Maldonado references a third civil rights case that he argues was hindered by the USB drive's confiscation. See Doc. 3 at 8.

The first case he references is his state court civil rights action in Maldonado, et al. v. Baker Cnty. Sheriff's Off., et al., No. 02-2020-CA-000062

(Fla. 8th Cir. Ct.).[10] Id. In that case, Maldonado and five other plaintiffs sued the Baker County Sheriff's Office and eight other defendants, alleging that defendants prevented them from communicating and maintaining a relationship while detained at the Baker County Jail and that the defendants retaliated against Maldonado for filing grievances. Maldonado, No. 02-2020-CA-000062. The state court entered an order finding that while six individuals were named as plaintiffs, Maldonado appeared to be the sole author of the complaint and noting that "Maldonado has initiated at least 8 actions in this circuit against the same or similar defendants since 2019." Id. The court found "that many of the claims [were] frivolous, and [the action] reasonably appear[ed] to be intended to harass one or more of the named defendants." Id. The court dismissed the complaint without prejudice and granted leave to amend, "so that individual plaintiffs may proceed on their own behalf with potentially meritorious claims by filing separate complaints . . . ." Id.

The second case Maldonado references on the "draft" discovery motion is Maldonado et al. v. Baker Cnty. Sheriff's Off., et al., No. 2020-CA-71 (Fla. 8th Cir. Ct.). Doc. 3-4 at 2. The defendants removed that action to federal court on June 22, 2020. See Maldonado v. Baker Cnty. Sheriff's Off., et al., No. 3:20-cv-

---

[10] The Court takes judicial notice of Maldonado's state court dockets. See McDowell Bey v. Vega, 588 F. App'x 923, 927 (11th Cir. 2014) (holding that district court did not err in taking judicial notice of the plaintiff's state court docket when dismissing § 1983 action); see also Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

638-MMH-JK (M.D. Fla.). The claims Maldonado raised in that action were much like those currently before the Court. See id. at Doc. 3. He alleged officials at the Baker County Jail transferred him to the Nassau County Jail to hinder his ability to litigate his lawsuits because the Nassau County Jail's law library was subpar and that the transfer exposed him to the coronavirus. Id. In March 2021, the Court granted the defendants' motion to dismiss as to Maldonado's claims against the Baker County Sheriff's Office, the Baker County Detention Center, and official-capacity claims against the other three defendants. Id. at Doc. 34. The Court found Maldonado failed to provide sufficient facts to state an individual-capacity claim against the remaining defendants and explained that the rambling nature of his assertions was confusing. Id. Thus, it granted Maldonado leave to file an amended complaint by April 23, 2021. Id. When he failed to comply with the Court's order, the Court directed him to show cause as to why the case should not be dismissed for his failure to prosecute. Id. at Doc. 38. Maldonado again failed to respond, and thus the Court dismissed the action on June 14, 2021. Id. at Doc. 39.

Finally, Maldonado alleges that Defendants' confiscation of the USB drive hindered his pursuit of his claims in Maldonado, et al. v. Nassau Cnty. Sheriff's Off., et al., No 45-2020-CF-000166 (Fla. 4th Cir. Ct.). See Doc. 3 at 8. The defendants in that case removed the action to this Court on August 26, 2020. See Maldonado, et al. v. Nassau Cnty. Sheriff's Off. et al., No. 3:20-cv-

959-BJD-JBT (M.D. Fla.). In that complaint, Maldonado and two other plaintiffs sued the Nassau County Sheriff's Office and seven other defendants for, <u>inter alia</u>, prohibiting Maldonado and another plaintiff from having a romantic relationship; exposing Maldonado to the coronavirus; enforcing an illegal mail policy; and having a subpar law library. <u>See id.</u> at Doc. 3. The defendants moved to dismiss, and the Court granted Maldonado's multiple requests for extension of time to respond to the motion to dismiss. <u>See id.</u> at Docs. 15, 17. When Maldonado failed to file a response by the last imposed deadline, the Court directed Maldonado to show cause as to why the case should not be dismissed for his failure to prosecute.[11] <u>Id.</u> at Doc. 20. When he failed to respond to the Court's order to show cause, the Court dismissed the case without prejudice for his lack of prosecution on April 26, 2021. <u>Id.</u> at Doc. 21.

Other than his conclusory statements that Defendants hindered his ability to litigate those three civil rights actions, Maldonado has not alleged any facts suggesting how the confiscation of his USB drive prejudiced his pursuit of a specific non-frivolous claim. Maldonado did not appear to raise in those three actions any allegations involving the subject pornographic material

---

[11] Before entering the Order to Show Cause, the Court dismissed without prejudice all claims that the other two plaintiffs raised in the action. <u>See</u> <u>Maldonado</u>, No. 3:20-cv-959-BJD-JBT (M.D. Fla.) (Doc. 19).

that he now claims is crucial to these civil rights suits. And, likely of more import, none of those three cases progressed to a discovery period for which he asserts disclosure of the photographs was required. Maldonado also has not alleged how the denial of access to the USB drive prejudiced his pursuit of any other civil rights action. Indeed, the Complaint exhibits show that officials confiscated the USB drive on August 10, 2020. See Doc. 3 at 27. Maldonado has filed at least four civil rights actions since that date. See Nos. 3:20-cv-958-MMH-JBT;  3:20-cv-959-BJD-JBT;  3:20-cv-1109-MMH-PDB;  3:21-cv-01266-BJD-PDB.

Likewise, to the extent that Maldonado alleges that he "strongly believes that [Defendant] DeLuca is involved with Baker County Detention Center and Defendants in a conspiracy to violate [his] civil rights and hinder his access to courts . . . ," that claim also fails. Doc. 3 at 7. Maldonado merely speculates about the existence of a conspiracy. He fails to assert that the alleged conspirators made and shared a single plan to deprive him of a federal right or that the conspirators committed an overt act in furtherance of the conspiracy, which caused an injury to Maldonado. See Burge v. Ferguson, 619 F. Supp. 2d 1225, 1237 (M.D. Fla. 2008) (holding to properly state a claim for conspiracy under § 1983, a plaintiff must allege, with specificity, that the defendants agreed to deny the plaintiff his constitutional rights, and that defendants did, in fact, violate plaintiff's constitutional rights); Fullman v. Graddick, 739 F.2d

25

553, 556-57 (11th Cir. 1984) (A court may properly dismiss a conspiracy claim if it includes only conclusory allegations and does not contain specific facts to inform the defendant "of the nature of the conspiracy alleged."); Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff claiming a § 1983 conspiracy must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights."); Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement, which presupposes communication."). And his vague and conclusory allegations unsupported by material facts are insufficient. Twombly, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one).

In sum, Maldonado fails to establish an actual injury or highlight any nonfrivolous underlying claim that he could not adequately present because he lacked access to the USB drive. Thus, he has failed to state a plausible First Amendment claim on which relief may be granted, and any access to court claim is due to be dismissed.

ii.   Fourth Amendment

**Illegal Search and Seizure**

Maldonado alleges that Defendants violated his Fourth Amendment rights when they conducted cell searches and searched his USB drive outside

his presence. Doc. 3 at 6, 9. In support of this argument, Maldonado cites United States v. Cohen, 796 F.2d 20 (2d Cir. 1986), and argues that Defendants are prohibited from searching his property to look for evidence to use against him. Id. at 10.

Generally, pre-trial detainees and prisoners enjoy a lowered expectation of privacy than those who are not incarcerated. See Hudson v. Palmer, 468 U.S. 517, 527-28 (1984) ("[T]he Fourth Amendment's proscription against unreasonable searches does not apply within the confines of the prison cell."); Bell v. Wolfish, 441 U.S. 520, 546, 556-57 (1979) (holding that the warrantless search of a pretrial detainee's "room" did not violate the Fourth Amendment). A Fourth Amendment analysis for a detainee or prisoner is rooted in the underlying penological purpose of maintaining safe and secure prisons and jails. In that context, cell searches are deemed reasonable if "valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries." Hudson, 468 U.S. at 529. Maldonado appears to argue that the cell search and search of his USB drive were unrelated to penological matters and instead were like the illegal cell search conducted in Cohen, 796 F.2d at 20. But the facts of Cohen are distinguishable. In Cohen, multiple appellants sought a direct appeal of their drug conspiracy convictions, arguing that a warrantless search of one appellant's jail cell during his pretrial custody violated the Fourth Amendment. 796 F.2d at 21. The facts

27

surrounding the search showed that the United States Attorney prosecuting the conspiracy case "directed [Metropolitan Correctional Center] prison authorities to enter [the pretrial detainee's] cell 'to look for certain types of documents that may have contained the names and phone numbers of other of [the detainee's] co-conspirators and witnesses who [the detainee] had already contacted and was still in the process of trying to contact.'" Id. at 21. The Second Circuit Court of Appeals found that a cell search conducted under such circumstances was unconstitutional. The court explained that pretrial detainees retain Fourth Amendment protection against searches "at the instigation of non-prison officials for non-institutional security related reasons." Id. at 24.

Unlike the search at issue in Cohen, Maldonado does not allege that non-prison officials instigated Maldonado's cell and USB drive searches for non-institutional security related reasons. Rather, according to his own allegations, Defendants, who are prison officials, instigated the searches after being advised that Maldonado was in possession of illicit photographs that were circulating to other inmates. Thus, Maldonado has failed to state a plausible claim for relief under the Fourth Amendment and this claim is due to be dismissed.

iii.   <u>Fourteenth Amendment</u>

***Due Process***

Maldonado also alleges that Defendants' confiscation of the USB drive violated his due process rights because "some kind of hearing is required before a person is deprived of his property." Doc. 3 at 10. Likewise, he asserts that Defendants violated his due process rights when they deprived him of his personal items during cell searches conducted outside Maldonado's presence. <u>Id.</u> at 14, 18.

The Due Process Clause is not offended when a state employee intentionally deprives a prisoner of his property if the state provides him with a meaningful post-deprivation remedy. <u>See</u> <u>Hudson</u>, 468 U.S. at 533; <u>Jackson v. Hill</u>, 569 F. App'x 697, 698 (11th Cir. 2014); <u>Taylor v. McSwain</u>, 335 F. App'x 32, 34 (11th Cir. 2009) ("Regarding deprivation of property, a state employee's unauthorized intentional deprivation of an inmate's property does not violate due process under the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available."). Maldonado has an available, adequate post-deprivation remedy under state law. "Under Florida law, [a plaintiff] can sue the officers for the conversion of his personal property." <u>Jackson</u>, 569 F. App'x at 698 (citing <u>Case v. Eslinger</u>, 555 F.3d 1317, 1331 (11th Cir. 2009)). Moreover, any assertion that Defendants were negligent when they failed to ensure that Maldonado's property was replaced or returned does not

29

rise to the level of a Fourteenth Amendment violation. See Maddox v. Stephens, 727 F.3d 1109, 1119 (11th Cir. 2013) (stating mere negligence does not rise to the level of a substantive due process violation). As such his due process claims about the confiscation, loss, and withholding of his USB drive and legal documents/material, as well as personal property fail because neither the negligent nor intentional deprivation of his property gives rise to a claim under § 1983.

Further, to the extent that Maldonado claims that he was transferred from the Baker County Jail to the Nassau County Jail without due process, that claim also fails. See Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008) (per curiam) (explaining the prisoner "did not state a due process claim because he has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison"). Thus, Maldonado fails to state a plausible claim for relief under the Due Process Clause and these claims are due to be dismissed.

### *Deliberate Indifference*

Maldonado also appears to allege a Fourteenth Amendment claim about the conditions of his confinement. He asserts that he needs to be tested for "arsenic poisoning" because there is a "high probability" that the Baker County and Nassau County Jails have engaged in "conspiratorial conduct" to violate his rights and possibly cause his death because he lost weight after his transfer

30

to the Nassau County Jail. Doc. 3 at 8. He also complains that his transfer exposed him to the coronavirus. Id. at 7.

Because Maldonado is a pretrial detainee, his conditions of confinement claims are reviewed under the Fourteenth Amendment rather than the Eighth Amendment. See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017). But the standard for providing basic human needs and a safe environment to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments. Id.; Goodman v. Kimbrough, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) ("Regardless of the particular taxonomy under which we analyze the case, however, the result is the same, because 'the standards under the Fourteenth Amendment are identical to those under the Eighth.'") (citation omitted). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id.[12] The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that

---

[12] Chandler, 379 F.3d at 1289.

> prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Oliver, 739 F. App'x at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

To state a claim that his conditions of confinement violated the Eighth Amendment, Maldonado must allege that Defendants were deliberately indifferent to conditions that were "sufficiently serious." Chandler, 379 F.3d at 1288. Conditions of confinement are "sufficiently serious" only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." Id. at 1289. Allegations of merely harsh conditions do not state a claim under the Eighth or Fourteenth Amendments. Id.

Maldonado fails to present factual allegations sufficient to satisfy the subjective component of a deliberate indifference claim. He fails to allege that

any named Defendant had subjective knowledge of his alleged weight loss or exposure to the coronavirus. Indeed, he fails to allege that he advised anyone of any medical ailment or harsh condition. Instead, he merely contends that he thinks the Baker County and Nassau County Jails have engaged in "conspiratorial conduct" to violate his rights. This conclusory allegation is insufficient to show that any named Defendant disregarded an excessive risk to his health by conduct that was more than mere negligence. Thus, these facts do not state a Fourteenth Amendment violation and this claim is due to be dismissed.

### *Equal Protection*

Maldonado also appears to assert that Defendants' confiscation of his USB flash drive and cell searches were based on racial discrimination. Doc. 3 at 15. To the extent that Maldonado intends to raise an equal protection claim, his allegations are insufficient. The Eleventh Circuit has explained the requirements of an equal protection claim in a § 1983 suit:

> The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish such a claim, a prisoner can allege that: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (internal quotations omitted); Damiano v. Fla. Parole

33

& Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986).

Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 867 (11th Cir. 2008). Here, Maldonado does not allege that a similarly situated individual of another race had a USB drive containing illicit material, but Defendants treated that individual differently.

Also, to the extent that Maldonado makes a blanket challenge to how detainees or prisoners are treated, his status as a detainee alone does not equal a suspect classification warranting a heightened constitutional protection. See Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1319 (11th Cir. 2006) (holding that differential treatment did not support an equal protection claim absent any evidence of invidious discrimination based on a protected characteristic); Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003) ("As prisoners are not a suspect class, heightened scrutiny is not warranted on that basis."). Maldonado has failed to state a plausible claim for relief under the Equal Protection Clause, and thus this claim is due to be dismissed.

iv.    HIPAA

Maldonado alleges that his HIPAA-protected "electronic health records" were stored on the USB flash drive and he did not provide written authorization permitting Defendants to review those medical records. Doc. 3

34

at 11; Doc. 3-2 at 2, Doc. 3-3 at 3. Thus, he claims Defendants violated HIPAA when they searched the drive without his consent. Doc. 3-3 at 3.

HIPAA generally provides for confidentiality of medical records. 42 U.S.C. §§ 1301 d-1 to d-7. See also 45 C.F.R. § 164.502. It provides for both civil and criminal penalties for improper disclosures of medical information and limits enforcement of the statute to the Secretary of Health and Human Services. 42 U.S.C. §§ 1320d-5(a)(1), 1320d-6. The Eleventh Circuit has determined that HIPAA contains no express provision creating a private cause of action or rights enforceable under 42 U.S.C. § 1983. Sneed v. Pan Am. Hosp., 370 F. App'x. 47, 50 (11th Cir. 2010). Thus, Maldonado's HIPAA claim is not cognizable in this § 1983 action and is due to be dismissed.

v.    Copyright Infringement

Maldonado alleges that the confiscated USB drive contained an electronic copy of the book he is writing, and thus he sues Defendants for copyright infringement. Doc. 3 at 16. Maldonado's conclusory copyright claim, standing alone, does not implicate a constitutional protection. The Copyright Act and its related legislation protect an individual's secured right to reproduce or distribute literary or artistic work. See Eldred v. Ashcroft, 537 U.S. 186, 219-21 (2003). The relationship between the Copyright Act and constitutional rights is complex and involves issues not raised here. See Golan v. Holder, 565 U.S. 302, 326-28 (2012). Thus, this claim is due to be dismissed.

### c. Defendant Nassau County Sheriff's Office

Next, Defendants argue that all claims against Defendant Nassau County Sheriff's Office should be dismissed because it is not a legal entity subject to suit. Doc. 6 at 9-10. "Florida law has not established Sheriff's offices as separate legal entities with the capacity to be sued." Faulkner v. Monroe Cnty. Sheriff's Dep't, 523 F. App'x 696, 701 (11th Cir. 2013); see also Herrera v. Rambosk, No. 2:17-cv-472-JES-MRM, 2019 WL 1254772, at *4 (M.D. Fla. Mar. 19, 2019) (dismissing the Collier County Jail under § 1915(e)(2)(B)(ii)); Monroe v. Charlotte Cnty. Jail, No. 2:15-cv-729-JES-MRM, 2015 WL 7777521, at *2 (M.D. Fla. Dec. 3, 2015) ("A correctional facility or [a] jail is not a proper defendant in a case brought under 42 U.S.C. § 1983."). The Nassau County Sheriff's Office is not an entity subject to suit under Florida law. Thus, Maldonado fails to state a claim upon which relief may be granted against Defendant Nassau County Sheriff's Office and it is due to be dismissed as a Defendant in this case.

### d. Three-Strikes Rule

Last, Defendants urge the Court to revoke Maldonado's in forma pauperis (IFP) status that the state court granted to him and dismiss this action under § 1915(g) because Maldonado has had three prior qualifying dismissals and does not meet the imminent danger exception to dismissal. See Doc. 6 at 11. The Eleventh Circuit, however, recently rejected this exact

argument. <u>See</u> <u>Maldonado v. Baker Cnty. Sheriff's Off.</u>, 23 F.4th 1299, 1306-07 (11th Cir. 2022). The court held:

> The plain and ordinary meaning of § 1915(g) is clear – it only applies to cases commenced in federal court by a prisoner who sought and was granted <u>in forma pauperis</u> status in that court. As such, § 1915(g) does not apply to actions, like the one here, brought by a three-strikes litigant in state court that was removed to federal court by another party.

<u>Id.</u> Maldonado did not initiate this action in federal court. Rather, Defendants removed the case to this Court and paid the filing fee upon their removal. Thus, Defendants' Motion on this issue is due to be denied.

## V. Defendants Inmate Howard Jones and The United States Marshals Service

Although the Motion does not address Maldonado's claims against Defendants Inmate Howard Jones and the United States Marshals Service, the Court is under an obligation to dismiss a case at any time if it fails to state a claim. <u>See</u> 28 U.S.C. § 1915(e)(2)(B). Here, Maldonado alleges that Defendant Inmate Howard Jones stole printed pornographic photos from Maldonado's cell and when officials caught him with the photos, Jones informed officials that Maldonado was storing the material on his USB drive. Doc. 3 at 17. Maldonado asserts that Defendant United States Marshals Service later took "illegal possession of Maldonado's medical and attorney-client legal information

without legal authorization." Id. at 16. He contends these Defendants' actions violated his rights under the First Amendment. Id. at 16-17.

Section 1983 provides a mechanism for a litigant to seek redress when persons acting under color of state law violate the litigant's federal constitutional or statutory rights. See 42 U.S.C. § 1983. Maldonado does not allege any facts suggesting that Defendants Inmate Howard Jones and the United States Marshals Service are state actors. As such his claims against these Defendants are due to be dismissed.

## VI. Conclusion

Defendants' Motion is due to be granted in part and denied in part. The Motion is granted to the extent that Maldonado has failed to state a plausible claim for relief against Defendants Nassau County Sheriff's Office, Murdock, Beazley, DeLuca, Edgy, Morgan, Nye, and Campbell. The Motion is denied as to all other arguments. The Court also finds that Maldonado has failed to state a plausible claim for relief against Defendants Inmate Howard Jones and the United States Marshals Service. Thus, this action is due to be dismissed without prejudice.

If Maldonado refiles, he is advised that to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right secured under the Constitution or laws of the United States. See Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Harvey v.

38

Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). He must avoid the rambling nature of his current allegations as "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." Rehberger v. Henry Cnty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (quotations and citation omitted). He also must include facts showing how each named defendant allegedly violated his rights, and all claims raised must be related–meaning that the claims must arise from the same basic issue or incident. Unrelated claims must be raised in a separate lawsuit.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Defendants' Motion (Doc. 6) is **GRANTED in part and DENIED in part**.

2. All claims against Defendants and this case are **DISMISSED without prejudice**.

3.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of October, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-7

c:     Hamza Maldonado, #70478-018
       Counsel of Record